[No. 35124.   Department Two.   January 21, 1960.]

ROBERT H. PATRICK, *Appellant*, v. VERNE B. KUSKE *et al.*, *Respondents.*[1]

*Robert E. Conner*, for appellant.

*Hughes & Jeffers*, for respondents.

ROSELLINI, J.—The appellant is lessee of certain premises in the city of Wenatchee; the respondents operate a busi-

[1]Reported in 348 P. (2d) 414.

ness known as the "Peter Rabbit Store" on the adjoining premises. Desiring to acquire the appellant's leased property for a parking lot facility, the respondents entered into a contract with him, dated October 5, 1956, whereby the appellant acknowledged receipt of $500 and agreed to convey, within forty-five days, his leasehold interest to the respondents upon payment by them of the further sum of $8,200, which latter payment was to be made not later than January 10, 1957.

The contract further provided that the appellant would, within thirty days, remove all of his personal property from a designated portion of the lot; and that upon completion of this removal, the respondents would pay a monthly rental of $163 until such time as they should enter into a new lease with the owner.

The paragraph on which the controversy centers, reads:

"FIFTH. It is mutually understood and agreed by the parties hereto that in the event that Second Party is unsuccessful in negotiating a new lease on the above described premises with the fee owner, Mrs. Grace L. Zufall Boston within forty-five (45) days from date of execution hereof, for a period of forty-nine (49) years, at a monthly rental of Two Hundred Fifty Dollars ($250.00), with option to renew said lease for fifty (50) years at a rental to be then determined, that this agreement shall be of no force and effect and that First Party shall retain the Five Hundred Dollars ($500.00) herein provided to be paid as liquidated damages."

At the end of the forty-five days, a new lease had not been negotiated, and the appellant extended the time in which the respondents' performance could be completed. Early in January, they notified him that they would not complete the purchase. The evidence shows that they had attempted, through their attorney, to negotiate a lease, but that the owners were not willing to give a lease which did not provide for adjustment of rent on the eighteenth and thirty-fifth anniversaries of the lease. A proposed lease was prepared and submitted to the respondents' attorney. This lease provided for adjustments in rent, on the basis of appraisals, upon the application of either party; and provided

that such adjustments should not exceed fifteen per cent of the then existing rental.

These terms were not acceptable to the respondents, and no further negotiations were conducted. They paid the rent due under the appellant's lease for the months of November, December, and January. Early in January, their attorney notified the appellant that no lease would be taken by the respondents. Thereafter, this suit was instituted. The action was tried to the court, which found that the respondents had "waived" the forty-five day limitation, but were unable to obtain a lease containing the stipulated rental provision and, therefore, were not obligated to take an assignment of the lease.

The appellant contends that the respondents were required, under the contract, to diligently negotiate for a lease which would contain the terms set out in the fifth paragraph of their contract with the appellant. They further insist that the evidence shows, and the trial court should have found, that they failed in this duty because they made no attempt to induce the owners to change their minds after a proposed lease was submitted to them.

The respondents' duty to take an assignment of the appellant's lease and pay $8,700 therefor was, by the terms of the lease, conditioned on their successful negotiation of a new lease from the owners within forty-five days, said lease to provide for a rental of $250 per month for forty-nine years, with an option to renew for fifty years at a rental to be then determined. The appellant contends that the respondents impliedly promised that they would exert every effort to obtain such a lease.

The applicable rule is stated in 1 Restatement, Contracts, 366, § 257:

"Failure of a condition to exist or to occur even though the condition is some performance by a party to the contract, is not a breach of contractual duty by him unless he has made an enforceable promise that the condition exists or shall occur. Whether he has done so is a question of interpretation."

In accord with this rule, is 3 Corbin on Contracts 205-206, § 570:

"Contractual promises are very generally conditional promises, the duty of rendering immediate performance being subject to some condition precedent, express, implied, or constructive. This condition precedent may be some other performance by the promisor himself; in some such cases the promisor has been held to have made, by implication, an additional promise to perform the condition precedent to the duty that he undertook in express words, while in other cases no such inference is justified."

Our research has disclosed six cases having factual situations similar to the one involved in this case. In three of them, *Slack v. Munson* (La. App.), 61 So. (2d) 618, *Lach v. Cahill,* 138 Conn. 418, 85 A. (2d) 481, and *Carlton v. Smith,* 285 Ill. App. 380, 2 N. E. (2d) 116, an implied promise was found. In the other three, *Britschgi v. McCall,* 41 Cal. (2d) 138, 257 P. (2d) 977, *Shaper v. Gilkison* (Tex. Civ. App.), 217 S. W. (2d) 878, and *Reinert v. Lawson* (Tex. Civ. App.), 113 S. W. (2d) 293, the courts did not recognize that such an implied promise could exist.

In *Slack v. Munson, supra,* a contract for sale of realty was conditioned on the purchaser's being able to negotiate a ten thousand dollar loan on the property. The agreement was executed with knowledge on the part of the vender that the purchaser had been assured he could get a ten thousand dollar loan at four and one-half per cent interest for a period of fifteen to twenty years. The court held that this plan and understanding inferentially became a part of the agreement, and when the vendee was unable to negotiate such a loan, he was relieved of his obligation under the contract even though he could have obtained the money from other sources with more onerous conditions attached. The court said:

"In order to fulfill his obligations in good faith under the provisions of this contract, the plaintiff was required to make a reasonable effort to obtain a loan similar to the one contemplated . . . and it is shown by the evidence that he did not cease his efforts to secure such a loan."

In *Lach v. Cahill, supra,* it was held that a provision in a contract for sale of realty making the purchaser's ability to secure a mortgage a condition precedent to his performance, implied a promise by the purchaser that he would make a reasonable effort to secure a suitable mortgage. The purchaser unsuccessfully applied for a mortgage loan at five different banks and loaning institutions. Although the seller subsequently offered to take back a purchase-money mortgage payable on demand, the court held that this type of mortgage was not contemplated by the parties and that the purchaser had made a reasonable effort to secure a suitable mortgage. The return of his earnest-money deposit was decreed.

*Carlton v. Smith, supra,* was a suit by a seller of real estate, setting out in the complaint an agreement made subject to the procurement of a satisfactory lease. A demurrer to the complaint was sustained, and on appeal the court held that the seller was required to allege the procurement of a lease satisfactory to the buyer or his willful refusal to procure such a lease. The demurrer was held properly sustained to a count which lacked these allegations. In reversing as to another count, which alleged that the buyer made no effort to obtain a satisfactory lease, the court said:

"The enforcement of the contract was by its terms dependent upon 'the procurement of a satisfactory lease between second party and owner of the building wherein business is now located.' This clearly contemplated that there should be some effort on the part of appellee to procure from the landlord a lease which was satisfactory to him. If he could, without good reason, refrain from doing so, then the agreement, at his whim, could be rendered nugatory and the execution of the contract an idle and meaningless ceremony. We cannot ascribe to the parties, as evidenced by the language of the contract, such an intent; on the contrary, it is our conclusion that they purposed that appellee should, in good faith, attempt to secure from the landlord a lease which was satisfactory to him, and failing in the endeavor, should be excused from the performance of his contract."

It will be seen that these courts have implied an undertaking on the part of the buyer to make a reasonable effort to

see that the condition is fulfilled; none of them have required him to do a useless act or to accept terms which are more onerous than those contemplated by his contract with the seller. In *Britschgi v. McCall, supra, Shaper v. Gilkison, supra,* and *Reinert v. Lawson, supra,* all cases hardly distinguishable on the facts, the court refused to find an implied promise. In the latter case, a sale of a gin plant was made contingent on the closing of a pending deal between the buyer and a bank. The evidence showed that the "pending deal" was for the sale of a farm from the bank to the buyer and that the buyer, although offered the farm by the bank, refused to purchase it. The court said:

"The stipulation under consideration, by its express terms, made the closing of appellee's deal with the bank a prerequisite to the existence of any obligation on the part of appellee to perform his contract with appellant. It, therefore, contains the essential elements of a condition precedent. The pending deal between appellee and the bank had no direct connection with the contract between the parties hereto. It was an uncertain thing, which might or might not occur. Making the closing thereof a condition precedent to liability on said contract did not imply any promise on the part of appellee or impose any duty on him to close such deal if he could. 5 Page on Contracts, p. 4516, § 2576, and authorities cited; Supplement thereto, vol. 2, p. 1813, § 2576, and authorities cited; 1 Restatement Law of Contracts, p. 366 et seq., § 257."

In none of these cases did the court refer to any of the authorities recognizing the existence of an implied promise in cases of this type. The section referred to in Page by the Texas court, simply states the general rule that a conditional promise does not include a promise that the condition will occur. Section 257 of the Restatement is the one which we have quoted above and which recognizes that it may be found that there was an enforcible promise that the condition would occur.

It is not necessary for us to decide here which is the better rule; for, giving the appellant the benefit of the more liberal holdings and conceding that there was an implied promise on the part of the respondents to make a reasonable

effort to secure a lease containing the terms set forth in the contract, there was evidence that they did do so, and the trial court so found.

The burden was upon the appellant to allege and prove that the condition was met, that is, that the lease was procured or that the respondents willfully refused to procure it. This necessitates some proof that the lease could have been obtained had the respondents made a further effort in that regard. The record is devoid of any such evidence.

There was no evidence contradicting the testimony of the owners' counsel that they were unwilling in any event to give a lease which did not contain an escalator clause for the adjustment of rent. This being the case, a further attempt to negotiate such a lease would have been a useless act, and such an act the law does not require.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and FOSTER, JJ., concur.

_____

March 14, 1960. Petition for rehearing denied.